O'CONNOR PLAYDON & GUBEN LLP
JERROLD K. GUBEN    3107-0
JEFFERY S. FLORES    8691-0
733 Bishop Street, 24th Floor
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
Email: jkg@opglaw.com
       jsf@opglaw.com

Attorneys for Debtor,
IMUA BLUEHENS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>IMUA BLUEHENS, LLC,<br><br>              Debtor. | Case No. 11-01721<br>(Chapter 11)<br><br><u>Hearing:</u><br>Time:<br>Date:<br>Judge:   Honorable Robert J. Faris |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE
INTERIM USE OF CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363(c)(2) AND RULE 4001(b), F.R.Bk.P.**

Imua Bluehens, LLC, the Debtor and Debtor-in-Possession (the "Debtor"), hereby moves this Court for the entry of an order authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363(c)(2) and Rule 4001(b), F.R.Bk.P.

The Debtor seeks to use the cash collateral of its two consensual secured creditors GCCFC 2007-GG11 Ka Uka Boulevard, LLC (hereinafter "Greenwich") and the Department of Taxation, State of Hawaii (the "Department") (collectively "Secured Creditors"). See Exhibit A, Title Guaranty of Hawaii, Inc. Uniform Commercial Code Lien Search, May 25, 2011.

The total scheduled amount due the Secured Creditors, as of the Petition Date is in the principal amount of approximately $10 million secured by a First and Second Mortgages, Promissory Note and Financing Statement.

The Debtor seeks authority to use the Secured Creditors' Cash Collateral to pay operating expenses for the period to July 31, 2011 until the Court schedules a final hearing pursuant to Rule 4001(b)(2), F.R.Bk.P., as provided for by the Debtor's Chapter 11 budget 30-60-90 budget. See Exhibit B.

The Debtor proposes to provide adequate protection for the use of Cash Collateral by providing Greenwich with replacement liens having the same priority and extent as the respective Secured Creditor's existing security interests in its pre-petition collateral, in each respective Secured Creditors' collateral and priority and to the same extent and as its pre-petition liens, and subject to the same rights and challenges by or on behalf of the Debtor and payment of $30,000.00 for the period to July 31, 2011 for 30 days.

Nothing in this Motion shall be deemed a request for authority to assume, and nothing in this Motion shall be deemed an authorization to assume any executory contracts or unexpired lease under Section 365 of the Bankruptcy Code, 11 U.S.C. § 365.

This Motion is brought pursuant to 11 U.S.C. § 363 and Rules 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure, and is based upon the attached Memorandum in Support, the exhibits attached hereto, and by the record in this case, and by such other evidence and argument as counsel may present before or at the hearing on the Motion and the files and pleadings in this case.

DATED: Honolulu, Hawaii, June 17, 2011.

JERROLD K. GUBEN
JEFFERY S. FLORES
Attorneys for the Debtor
IMUA BLUEHENS, LLC,

O'CONNOR PLAYDON & GUBEN LLP
JERROLD K. GUBEN    3107-0
JEFFERY S. FLORES      8691-0
733 Bishop Street, 24th Floor
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
Email: jkg@opglaw.com
           jsf@opglaw.com

Attorneys for Debtor,
IMUA BLUEHENS, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>IMUA BLUEHENS, LLC,<br>a California corporation,<br><br>               Debtor. | Case No. 11-01721<br>(Chapter 11)<br><br><br>Hearing:<br>Time:<br>Date:<br>Judge:   Honorable Robert J. Faris |

**MEMORANDUM IN SUPPORT OF MOTION;
EXHIBITS A TO C**

In support of its Motion for Order Authorizing the Interim Use Cash

Collateral Pursuant to 11 U.S.C. § 363(c)(2), Imua Bluehens, LLC, the Debtor and

Debtor-in-Possession, respectfully represents as follows:

## I. BACKGROUND

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 17, 2011. The Debtor continues to operate its businesses pursuant to 11 U.S.C. §§ 1107 and 1108.

No creditor's committee has yet been appointed in this case.

As noted above, the Debtor has one major consensual general secured creditor, GCCFC 2007-GG11 Ka Uka Boulevard, LLC (hereinafter "Greenwich"), who holds a blanket security interest over the Debtor's assets or any creditors secured by the Debtor.

## II. SECURED CREDITOR

As of the Petition Date, the Debtor had one general consensual Secured Creditor, Greenwich, (collectively "Secured Creditor"), whose collateral might include cash collateral as that term is defined in the Bankruptcy Code. See Exhibit A, Title Guaranty of Hawaii, Inc. Uniform Commercial Code Lien Search, May 25, 2011.

## III. USE OF CASH COLLATERAL

Attached hereto is a draft Stipulation and Agreed Interim Order (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363(c)(2), (ii) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364, (iii) Scheduling of Final Hearing, and (iv) Granting Related Relief.

The Debtor requests authority to use the Cash Collateral on the same terms and conditions as provided for in the Stipulation and Agreed Interim Order (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363(c)(2), (ii) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364, (iii) Scheduling of Final Hearing, and (iv) Granting Related Relief, including the payment of an adequate protection payment of $30,000.00, to pay the reasonable and ordinary expenses of operating the Debtor's business, including, real property taxes, federal and state taxes, supplies and equipment, advertising, utility services, insurance, vendor and supplier services, and other expenditures as are necessary for operating his businesses and preserving their going concern value, including the "lease rents" to various Lessors, including professional fees and costs as approval by the Court, after notice and hearing.

The Debtor also requests authority to use the Cash Collateral to pay the reasonable and ordinary expenses to administer their estate in bankruptcy, including, without limitation, quarterly fees payable to the United States Trustee, and payment of the fees and reimbursement of costs to the Debtor's professionals including, without limitation, their attorneys, accountants, and the fees and reimbursement of costs to the professionals retained with the Court's approval by any statutory committees appointed in the Chapter 11 case, in amounts approved and authorized to be paid by the Court.

Debtor believes the Secured Creditor is adequately protected because the use of Cash Collateral enables the Debtor to operate its business, will replace the cash component of Cash Collateral, and the Debtor is willing to provide the Secured Creditor with full and complete replacement liens in the post-petition cash recovered by the Debtor and by the payment of $30,000.00 in adequate protection payments to Greenwich.

Without prejudice to the Debtor's and other parties' positions regarding the validity, perfection, priority, and/or extent of any of the Secured Creditors' claims or security interests in the Cash Collateral, and to provide adequate protection for such security interests (if and to the extent such security interests are valid and perfected), the Debtor intends to grant the Secured Creditors replacement liens (the "Replacement Liens"), with the same priority and extent as the respective Secured Creditors' existing security interests in the Pre-Petition Collateral and pay Greenwich an adequate protection payment of $30,000.00 post-petition.

The Replacement Liens would thus be granted with the same validity and priority and to the same extent and as the Secured Creditors' prepetition liens, and would be subject to the same rights and challenges by or on behalf of the Debtor. The amount secured by the Replacement Liens shall be equal to any actual

net diminution of the Secured Creditors' Cash Collateral due to the Debtor's use thereof.

The Replacement Liens shall be valid, perfected and enforceable against the Replacement Collateral as of the Petition Date, without further filing or recording of any document or instrument or the taking of any further action, and shall not be subject to dispute, avoidance or subordination as to the Adequate Protection Claim. The Replacement Liens shall be subject and subordinate in priority to any liens, security interests and other encumbrances, existing as of the Petition Date, or which attach to the Replacement Collateral after the Petition Date, that are valid, perfected, enforceable and unavoidable, that are granted with the consent of the Secured Creditors or that are otherwise senior to the pre-petition liens in favor of the Secured Creditors.

In addition to the Replacement Lien for the Debtor's use of cash collateral to be used in the operations of the Debtor, the Debtor will pay to Greenwich $30,000.00 as additional adequate protection for the interim use of cash collateral.

## IV.   THE COURT SHOULD AUTHORIZE THE DEBTOR'S USE OF CASH COLLATERAL BECAUSE THE SECURED CREDITORS ARE ADEQUATELY PROTECTED AND WILL CONTINUE TO BE ADEQUATELY PROTECTED

A debtor's use of estate property is governed by Bankruptcy Code Section 363. A debtor-in-possession may continue to operate its business unless

the court orders otherwise, under 11 U.S.C. §§1107 and 1108, and so long as the debtor continues to operate in its ordinary course of business, under Section 363(c)(1) of the Bankruptcy Code, without notice or a hearing the debtor may enter into transactions and use property of the estate, provided said property does not constitute cash collateral.

"Cash collateral" is defined in Bankruptcy Code Section 363(a) as meaning "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title."

Bankruptcy Code Section 363(c)(2) permits a debtor to use cash collateral if either of two alternate circumstances exist:

(a)     each entity that has an interest in such collateral consents; or

(b)     the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section.

<u>11 U.S.C. § 363( c)(2)</u>.

Therefore, the Court may authorize use of a creditor's cash collateral in the absence of creditor consent.

Authority to use Cash Collateral is consistent with the very purposes for which Chapter 11 exists:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019(11th Cir. 1984).

Courts will allow the use of cash collateral when the use tends to enhance or preserve the debtor's reorganization value. See, e.g. Stein v. United States Farmers Home Administration (In re Stein), 19 B.R. 458, 460 (Bankr. Pa. 1982) (debtor was granted authority to use cash collateral where the secured party was undersecured because the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]"); In re Dynaco Corp., 162 B.R. 389, 396 (Bankr. D.N.H. 1993) (finding that the alternative to the debtor's use of cash collateral, termination of the debtor's business, would doom the reorganization and any chance to maximize value for all of the creditors).

In two leading cases involving the use of cash collateral in real estate projects, the maintenance of the property is the adequate protection required by the code.

In <u>In re 5028 Wisconsin Ave. Associates, Ltd.</u>, 167 B.R. 699, 706 (Bank. D.D.C. 1994), the Court wrote as to the use of the secured creditor's cash collateral, the rents to operate the project,

> By the same token, however, the debtor would be entitled to use the cash collateral upon providing the mortgagee adequate protection. Usually, adequate protection can be accorded the mortgagee by devoting the rents to necessary costs of operating and preserving the building so as to continue generating rents. <u>See</u> <u>In re Sunset Centres Ltd. Partnership</u>, Misc.Action No. 93-26 (D.D.C. 1993) (Penn, C.J.); <u>In re Ledgemere Land Corp.</u>, 116 B.R. 338, 343 (Bankr.D.Mass. 1990); <u>In re Willowood East Apts. Of Indianapolis II, Ltd.</u>, 114 B.R. 138, 142-43 (Bankr.S.D.Ohio 1990). The debtor's use may alternatively be authorized under 11 U.S.C. § 552(b) by limiting the mortgagee's security interest based on the equities of the case to rents net of operating and maintenance expenses. <u>Sunset Centres</u>; <u>In re Cardinal Indus., Inc.</u>, 118 B.R. 971, 981 (Bankr.S.D.Ohio 1990); <u>Willowood East Apts.</u>, 114 B.R. at 143-44.

In <u>In re Willowood East Apartments of Indianapolis</u>, 114 B.R. 138, 143-44 (Bankr.S.D.Ohio 1990), a secured creditor's § 552(b) interest in post-petition rents only extends to "net rents" after the payment of ordinary, necessary expenses required to maintain and operate to preserve its value. Such preservation not only permits the reorganization process to proceed, but it also preserves the

value of the secured creditor's allowed claim as to what the <u>Willowood East Apartment</u> Court felt were reasonable expenses, the Court found the following may be paid from gross rents:

> 1.      All payroll and normal and reasonable employee expenses, including post-petition payroll taxes for employees located at the Property;

> 2.      Utilities, equipment leases, insurance and similar expenses necessary to operate the Property;

> 3.      Reasonable fees under management and marketing agreements;

> 4.      Ordinary and necessary repairs and maintenance to permit the continued use and operation of the Property, but not, without consent of Lincoln, any expenditure generally considered to be a capital improvement;

> 5.      Ordinary advertising or marketing expenses;

> 6.      Taxes and governmental charges accruing after the filing of the Petition herein attributable to the Property;

> 7.      Reasonable bookkeeping and accounting fes to the entity chosen by the Debtor to perform these services for the Property; and

> 8.      Other charges incurred after the filing of the Petition which are necessary to conduct the Debtor's normal business operations.

Pursuant to Section 363(e), "on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the

trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added). Thus, the Court may authorize the Debtors to use the Secured Creditor's cash collateral if their interest in such collateral is adequately protected.

Bankruptcy Code Section 361 addresses the issue of adequate protection, and although adequate protection is not defined therein, several nonexclusive methods of adequate protection are enumerated:

> When adequate protection is required under sections 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by-
>
> (1)  requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2)  providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. §361.

It is only when the value of a secured creditor's interest in collateral is likely to decline post-petition that added protection is needed:

> The analysis of the Supreme Court in Timbers is instructive here. <u>The phrase "interest in property" in § 363(e) means the value of the collateral. That is the interest that I am required to protect</u>. If that value is likely to diminish during the time of the use, adequate protection must be provided by the Debtor.

In re McCombs Properties VI Ltd., 88 B.R. 261, 266 (Bankr.C.D.Cal. 1988) (emphasis added). Accord, <u>In re Delta Resources, Inc.</u>, 54 F3d 722, 730 (11th Cir.), cert denied, 64 U.S.L.W. 3348 (1995); <u>In re Westchase I L.P.</u>, 126 B.R. 692, 694-95 (W.D.N.C. 1991). <u>See In re Weinstein</u>, 227 B.R. 284 (9th Cir.B.A.P.1998) (adequate protection other than replacement lien only required for deterioration or decline in value of the collateral).

The Court in <u>QMECT, Inc. v. Burlingame Capital</u>, 373 B.R. 682, 689-90 (N.D.Cal. 2007) summarized the Ninth Circuit law on the purpose of adequate protection, to protect the secured creditor from the diminution of collateral during the pendency, "not to compensate creditors for delay in being able to foreclose on collateral." Citing Justice Scalia's opinion in <u>In re Timbers of Inwood Forest Associates</u>, 484 U.S. 365, 377 (1988), the <u>QMECT</u> Court went on to note:

> The principle that adequate protection under 11 U.S.C. 363 is intended to compensate lenders for diminution of their collateral was reaffirmed by a Bankruptcy Appellate Panel of the Ninth Circuit. <u>In re Weinstein</u>, 227 B.R. 284, 296 (9th Cir. BAP 1998). Bankruptcy courts have

held that lenders are not entitled to foreclose on replacement liens absent proof that collateral has diminished in value as a result of the automatic stay or the collateral's use during the pendency of a bankruptcy petition. In re Sun Valley Ranches, Inc., 38 B.R. 595, 598 (Br. Id. 1984) (Young, J.). Accordingly, the purpose of adequate protection is to protect lenders from diminution in the value of their collateral, so the bankruptcy court did not err in requiring secured lenders from proving that their collateral had diminished in value.

While the Debtor believes that a replacement, full and complete lien is adequate to protect the Secured Creditors security interest and the use of the Secured Creditors' cash collateral, the Debtor will pay Greenwich an additional payment of $30,000.00 for the use of the cash collateral. Since the collateral of real property is not deteriorating, Greenwich might not be entitled to any adequate protection payment, but the Debtor will give Greenwich $30,000.00 as additional adequate protection.

## V. THE SECURED CREDITORS ARE ADEQUATELY PROTECTED BY THE GOING CONCERN VALUE OF THE DEBTOR'S BUSINESS AND THE REPLACEMENT LIENS

Courts should take a pragmatic approach when assessing whether a secure creditor is adequately protected, and that may require consideration of whatever factors are relevant to a particular debtor. See, e.g., In re Rogers, 239 B.R. 883, 887 (Bankr. E.D.Tex. 1999):

The determination of whether a creditors interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation. Rather, it is pragmatic and synthetic, requiring a court to balance all relevant factors in a particular case, including the value of the collateral;, whether the collateral is likely to depreciate over time, the debtor's prospects for a successful reorganization and the debtors performance under the plan. In re Olick, 221 B.R. 146, 161 (Bankr.E.D.Pa.1998). Other considerations may include the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized. Id.

The Bankruptcy Code expressly provides that the granting of additional liens constitutes a means of providing adequate protection. 11 U.S.C. § 361(2) ("adequate protection may be provided by ... an additional or replacement lien to the extent that such... use ... results in a decrease in the value of such entity's interest in such property.").

Courts have recognized that the granting of replacement liens, coupled with the continued operations of the debtor, provides adequate protection of a creditor's interest in cash collateral used by the debtor. See, MBank Dallas N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1196-96 (10th Cir. 1987) (debtor authorized to use cash collateral to drill gas wells where creditors offered replacement liens of equal or greater value on well proceeds and other regular income).

The Secured Creditors will be granted replacement liens on the future revenues of the Debtor by the Secured Creditors and proceeds generated with alleged Cash Collateral with a value equal to the amount of the Cash Collateral expended by the Debtor. The Debtor proposes to pay Greenwich in addition to the Replacement Lien and 11 U.S.C. § 507(b) priority, a payment of $30,000.00, as additional adequate protection.

Accordingly, where a debtor's use of cash collateral protects the secured creditors from such loss, the secured creditors are adequately protected without any other form of adequate protection, other than a full and complete replacement lien. In this case, the Debtor is willing to provide additional adequate protection in the form of a cash payment of $30,000.00 to Greenwich. See, e.g., Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 730 (11th Cir. 1995); In re Westchase I Associates, L.P., 126 B.R. 692, 694 (Bankr. W.D.N.C. 1991) ("Thus, if the value of the property itself is not declining, as is the case here, the creditor would not be entitled to protection of the accruing interest value of the claim.").

## VI. IMMEDIATE RELIEF IS APPROPRIATE IN THIS CASE BECAUSE THE CONTINUATION OF THE DEBTOR'S BUSINESS DEPENDS UPON AUTHORIZATION TO USE CASH COLLATERAL

In enacting Section 363 of the Bankruptcy Code, Congress specifically recognized that it might be necessary to schedule expedited hearings

on requests for authorization to use cash collateral because of the business exigencies of individual cases. Section 363(c)(2)(B) authorizes the use, sale, or lease of cash collateral "after notice and a hearing." Section 363( c)(3) provides, in pertinent part:

> Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with the hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor . .. The court shall act promptly on any request for authorization under Paragraph (2)(B) of this subsection,

11 U.S.C. § 363(c)(3).

Similarly, the Ninth Circuit Court of Appeals has recognized that ex parte interim relief may be crucial to the success of a reorganization:

> We realize that "in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld" and that reorganization under the Bankruptcy Code "is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations." [citation omitted] ... It is for this very reason that Congress specified that hearings concerning the use of cash collateral "shall be scheduled in accordance with the needs of the debtor."

Owens-Corning Fiberglass Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985).

Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure provides that, at a preliminary hearing, the "court may authorize the use of only the amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Rule 4001(b)(2), F.R.Bk.P.

The Debtor requests, to avoid immediate and irreparable harm to the estate, the Court, schedule an Emergency Hearing for and authorize the Debtor to use the Secured Creditors' Cash Collateral through the date of the final hearing.

The Debtor must have the immediate use of the alleged Cash Collateral to meet payroll, and reasonable expenses, to meet the daily costs and expenses of operating, to promptly pay its vendors to keep the Debtor operating. Any delay in the Debtor's ability to meet any of these needs could deprive the Debtor of its business and the ability to successfully reorganize its financial affairs, to the prejudice of all creditors and parties in interest.

In this case, the entry of an order authorizing the use of the Secured Creditors' cash collateral is particularly relevant because,

(a)     Greenwich and the Debtor have entered into a Cash Collateral Stipulation in the form of this Court's Order, to continue business while the Debtor as the proceeds to confirm his Chapter 11 Plan;

(b)     Even though the major collateral real property is not subject to deterioration or depreciation, the Debtor is willing to give Greenwich full and

complete Replacement Liens and pay an adequate protection payment of $30,000.00 for the use of Greenwich's cash collateral for the next 30 days.

## VII. THE COURT SHOULD SCHEDULE A FINAL HEARING ON THE MOTION AS SOON AS PRACTICABLE

Rule 4001 (b) of the Federal Rules of Bankruptcy Procedure provides that "the court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. " Fed. R. Bank. Proc. Rule 4001(b)(1) (emphasis added).

The Debtor requests the Court set a final hearing on the Motion for Order Authorizing the Use of Cash Collateral, on or about July 21, 2011.

The Debtor further requests that, at the July 21, 2011 hearing on the Motion, the Court authorize the Debtors to continue to use revenues from the Cash Collateral for the Debtor's projected expenses, in accordance with the proposed Chapter 11 Plan budget, attached hereto as Exhibit B, to provide an analysis of the budget upon confirmation of the Plan.

## VIII. RESERVATION

At this time, the Debtor has not completed an analysis of the perfection or priority of the Secured Creditors' interests, or whether any of the claims or security interests of the Secured Creditor is subject to avoidance or subordination. Nothing in this Motion is intended or should be construed as an admission by the Debtor as to the nature, extent, or priority of the claims or

secured interests, if any, claimed by the Secured Creditor. Rather, to the extent the Secured Creditor have an interest in the Debtor's Cash Collateral, the Debtor proposes to provide the Secured Creditor with the adequate protection proposed herein.

## IX. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court:

(1)     enter an order authorizing the Debtor's immediate use of the cash collateral use of cash collateral for the period from June 17, 2011 to July 21, 2011, in accordance with this Motion, upon the Debtor, providing Greenwich full and complete replacement liens for all post-petition revenues and provide GREENWICH an adequate protection payment of $30,000.00 to be paid upon the entry of the order authorizing the use of cash collateral for 30 days. These are the same terms and conditions as provided for and approved by Greenwich, and this Court in the Cash Collateral Stipulation. The Cash Collateral Stipulation expires on July ___, 2011 and the Debtor needs emergency and immediate relief.

(2)     schedule a hearing on this Motion and a final hearing on the Motion for Order Authorizing the Use of Cash Collateral, no earlier than July ___, 2011;

(3)    for such other and further relief as the Court may deem just and

proper.

DATED: Honolulu, Hawaii, June 17, 2011.

JERROLD K. GUBEN
JEFFERY S. FLORES
Attorneys for the Debtor
IMUA BLUEHENS, LLC